(135 So. 431)

## SKEGGS v. STATE.

### 8 Div. 216.

Court of Appeals of Alabama.
March 17, 1931.

Rehearing Denied May 12, 1931.

Thos. E. Knight, Jr., Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

O. Kyle, S. A. Lynne, and A. J. Harris, all of Decatur, for appellant.

RICE, J.

Appellant, tried under an indictment charging him with the offense of murder in the

first degree, was convicted of the offense of murder in the second degree, and his punishment fixed at imprisonment in the penitentiary for the term of ten years.

It was shown that he shot and killed one T. E. Wright.

The contention of the state, as shown by its testimony offered, tending to support same, was that deceased, at the time he was shot by appellant, was a police officer of the city of Decatur, Ala., on active duty. And that as such police officer, deceased was, at the time he was so shot, endeavoring to arrest appellant for an alleged infraction of one of the traffic ordinances of the said city, or for a misdemeanor committed in the presence of said officer.

It was the contention of the appellant that, while he shot deceased, yet he did so in "self-defense," as that term is defined in the law; that he had violated no city ordinance, nor other law; that, if deceased was undertaking to arrest him, it was a wrongful arrest; that the identity of deceased was unknown to him, and not disclosed by deceased or his (deceased's) companion; that the rencounter occurred in the nighttime; and that deceased and his companion, one or both, were in the act of making an assault upon appellant, etc. Appellant's testimony tended to support this theory.

The case was in the main well tried, and we have made but a skeleton summary of the conflicting contentions of the state and the appellant, thinking it would be sufficient to illustrate the few holdings we shall declare, and believing further treatment unnecessary for the purposes of a retrial of the case.

The law, with reference to the character of evidence which may be put before a jury as of "dying declarations" made by the deceased, on account of whose alleged slaying a defendant is on trial, has been well stated by this court in an opinion by Bricken J. (now P. J.) in the case of Pilcher v. State, 16 Ala. App. 237, 77 So. 75, 76, from which we quote the following excerpt, to wit: "The ordinary rules that are invoked for the determination of the admissibility of evidence generally or of the competency of the witness testifying, are applicable to the admissibility of dying declarations and to the competency of the declarant in that time he made the declarations. *Hence whatever would exclude the testimony of a witness, if living, will exclude his dying declarations,* and whatever would render a witness, if living, incompetent to testify, will make his declarations inadmissible by reason of such incompetency. *In other words, the universal rule is that dying declarations are admissible only in a case where the evidence would be competent if the declarant were on the witness stand.* Therefore hearsay evidence cannot be rendered admissible by being included in a dying declaration; neither is a mere conclusion or an expression of opinion or belief by a dying man admissible as a dying declaration, and such a conclusion, expression of opinion, or belief of a dying man cannot be received in evidence. 1 R. C. L. p. 530; 21 Cyc. 988; Sullivan v. State, 102 Ala. 135, 15 So. 264, 48 Am. St. Rep. 22; Williams v. State, 130 Ala. 107, 30 So. 484."

These views have had the approval of our Supreme Court. See Ex parte State, Pilcher v. State, 201 Ala. 697, 77 So. 1001.

In the instant case, the state was allowed, over timely objection (with proper exception reserved), to introduce testimony of an alleged "dying statement" of the deceased that "he (deceased) was shot (by appellant) *in cold blood.*" (Italics ours.) We are unable to distinguish, in principle, between the admission of testimony of this statement, and that dealt with in the case of Pilcher v. State, supra, to wit: "He (deceased) said that that fellow (the defendant) *murdered him.*" (Italics ours.)

The term "cold blood" is used in common parlance to designate a willful, deliberate, and premeditated homicide. State v. Wieners, 66 Mo. 13, 25; Words and Phrases, First series, vol. 2, p. 1247.

We can add nothing to the reasoning showing the inadmissibility of the testimony in question contained in the opinion in Pilcher v. State, supra. But see Le Nier v. State, 19 Ala. App. 227, 96 So. 459; Jones v. State, 21 Ala. App. 33, 104 So. 878, 879; Humber v. State, 19 Ala. App. 451, 99 So. 68, 71 and 72.

The admission by the court, in evidence, of testimony of the statement—dying declaration—of the deceased, dealt with in the case of Sullivan v. State, 102 Ala. 135, 15 So. 264, 265, 48 Am. St. Rep. 22, to wit, "he cut me for nothing," etc., is easily distinguishable from the admission in evidence of testimony of the expression we are dealing with, i. e., "he said he shot him in cold blood." One was of a "negative fact." The other is, as was pointed out, of what we may call the similar statement, in the case of Pilcher v. State, supra, but the expression of a conclusion, or opinion. We therefore hold it was error and, manifestly, prejudicial, to admit in evidence the testimony as to the "dying statement" of the deceased Wright, in this case, which we have quoted above.

Under the facts shown in this case, it was material, as bearing upon the contention of appellant, as to whether or not one of his hands was defective, and its usefulness impaired, at the time of the fatal rencountre.

The deceased is shown to have been a very large and powerful man, young in years, and armed with a pistol.

The appellant was an old man, almost blind in one eye, and practically deaf in one ear.

And, if he was suffering from a defective condition in one of his hands, tending to render him more powerless to resist the attack (which he claimed) by deceased, such fact would, doubtless, have weighed substantially with the jury in deciding whether or not appellant was excusable in resorting to the use of his pistol.

'Appellant, in various ways, raises the question of the propriety, vel non, of the trial court's refusal to allow him to introduce testimony tending to show that, at the time of said fatal rencounter, one of his hands was "crippled, and that he couldn't straighten two of his fingers on same, etc."

■ Under the reasoning, and decision, in the case of Hill v. State, 146 Ala. 51, 41 So. 621, we think, and hold, that it was prejudicial error for the trial court to refuse to allow in evidence the testimony referred to in the next above paragraph. As said by Mr. Justice Miller, for the Supreme Court, in the opinion in the case of Lambert v. State, 208 Ala. 42, 93 So. 708, 710: "The size and *physical condition* [italics ours] of the defendant at the time of the fatal difficulty were relevant and competent." And see Hicks v. State, 21 Ala. App. 335, 108 So. 612.

■ It was error, and we think and hold prejudicial, to overrule appellant's objection to that portion of the argument of the solicitor, as follows: "I don't imagine Mr. Wright was worth much money, *because he was working on the police force here and left a wife and two little children,*" especially, the latter part of same, which we have italicized. Fisher v. State, 23 Ala. App. 544, 129 So. 303.

Other questions are apparent, but we regard them as being of a minor nature, and deem it not worth while to give them treatment here. They will probably not arise, in their present form, on another trial.

For the errors pointed out, the judgment of conviction must be, and is, reversed, and the cause remanded.

Reversed and remanded.

Thos. E. Knight, Jr., Atty. Gen., for the State.